■ CITYTRUST, Respondent, v ATLAS CAPITAL CORPORATION, Appellant.—Order of the Supreme Court, New York County (Shirley Fingerhood, J.), entered on April 12, 1990, which denied defendant Atlas Capital Corporation's motion for summary judgment dismissing the complaint, is unanimously reversed, on the law, and the motion by defendant granted, with costs and disbursements payable to defendant. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint, with costs.

Plaintiff, Citytrust, a banking corporation, in an attempt to obtain more business, sought defendant Atlas Capital Corporation's assistance and was introduced by Atlas to Suraj P. Duggal, president and principal shareholder of DDDDC Corporation (4D) engaged in the importing and sale of women's garments. Plaintiff gave a $300,000 line of credit to 4D secured by anticipated accounts receivable and other collateral. Three months before this, Atlas had entered a separate agree-

ment with 4D, in which Atlas provided bookkeeping services on 4D's accounts receivable. The scope of the services was specifically enumerated as (1) the monthly aging of accounts receivable; (2) open item statements; (3) transaction registers; (4) posting of cash and credits; (5) daily collection reports; and (6) credit and collection administration.

The agreement also provided that all the computerized reports generated by Atlas would be made available on a monthly basis to a banking institution of 4D's choice. It did not, however, obligate Atlas to take any steps to verify the *"bona fides"* of 4D's accounts receivable. Only in August of 1986, did plaintiff request that Atlas undertake verification of the accounts receivable.

In an incremental fashion plaintiff increased the credit line to 4D up to $1,000,000 in May of 1986. However, starting in March of 1986 and continuing until October of 1986, 4D issued fictitious invoices in the names of real and non-existent customers to obtain additional advances from plaintiff Citytrust, which lent funds to 4D in reliance on the invoices. All but two of the forged invoices pre-dated July 30, 1986.

By June of 1986 plaintiff had become suspicious of 4D and its loan review department had classified 4D as a "substandard or worse" credit risk. Therefore, plaintiff lowered the credit limit from $1 million to $850,000 and turned the 4D account over to its workout department to take whatever steps were deemed necessary to protect the bank's interest. Notwithstanding the assignment of a workout specialist to supervise the account, and the lowering of the credit limit, Citytrust continued to advance new sums to 4D although in less significant amounts.

In October and early November of 1986, plaintiff Citytrust discovered the fraud and sought to recover $690,000 in uncollectable loans due it. 4D, however, had no assets and the collateral proved to be worthless.

Consequently, Citytrust began this action against Atlas based upon defendant's alleged negligence, breach of contract, negligent use of words and breach of fiduciary duty, in allegedly failing to properly advise Citytrust that defendant's client 4D had been engaged in a scheme to defraud plaintiff. Specifically, the four causes the action were founded upon defendant's alleged failure to verify the *"bona fides"* of 4D's accounts receivable from March of 1986 when the fraud commenced, through November of 1986, when the fraud was finally discovered by plaintiff Citytrust.

The IAS court denied defendant's motion for summary judgment finding triable issues of fact as to whether Atlas was expected to verify and Citytrust had, in fact, relied upon the verification of 4D's invoices; whether Citytrust was a third-party beneficiary of the agreement by Atlas to perform bookkeeping duties for 4D; and whether a fiduciary relationship did exist between Atlas and Citytrust.

With respect to the first and third causes of action alleging negligence, the *nisi prius* court correctly recognized that defendant may not be held liable in negligence absent either actual privity of contract, or an underlying relationship between the parties so close as to be the functional equivalent of contractual privity *(Credit Alliance Corp. v Andersen & Co.,* 65 NY2d 536, 549-550). In that case, the Court of Appeals set forth three criteria to determine liability in negligence to non-contractual parties who rely to their detriment on inaccurate financial reports: an awareness by the defendant that its reports were to be used for a particular purpose; reliance by a known party in furtherance of that purpose; and conduct by the defendant linking it to the reliant party evincing the defendant's understanding of that party's reliance *(Credit Alliance Corp. v Andersen & Co., supra,* at 551).

Similarly, with respect to negligent statements, the New York Court of Appeals explained the duty imposed and the basis upon which a breach thereof becomes actionable, by stating, in pertinent part, that: "As to duty imposed, generally a negligent statement may be the basis for recovery of damages, where there is carelessness in imparting words upon which others were expected to rely and upon which they did act or failed to act to their damage *(Nichols v Clark, MacMullen & Riley,* 261 NY 118, 125), but such information is not actionable unless expressed directly, with knowledge or notice that it will be acted upon, to one to whom the author is bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at all *(Courteen Seed Co. v Hong Kong & Shanghai Banking Corp.,* 245 NY 377, 381)." *(White v Guarente,* 43 NY2d 356, 362-363.)

However, the IAS court erred in finding that the criteria established by the New York Court of Appeals for the functional equivalent of contractual privity had been satisfied and that triable issues of fact precluding summary judgment existed. Accordingly, the first and third causes of action for negligence should have been dismissed.

In *Iselin & Co. v Mann Judd Landau* (71 NY2d 420, 425), an

action involving alleged negligent reporting, the Court of Appeals held that to defeat a motion for summary judgment a plaintiff is required to produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on each of the elements of the *Credit Alliance* test and that " 'mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient' for that purpose". *(Supra,* at 425-426, quoting *Zuckerman v City of New York,* 49 NY2d 557, 562.)

The evidence submitted by plaintiff Citytrust herein consisted exactly of such "mere conclusions" and "unsubstantiated allegations or assertions", and was insufficient to defeat defendant's summary judgment motion.

The record clearly shows that there was no privity of contract until August of 1986 or relations so close as to approach that of privity between Citytrust and Atlas. The computerized reports that Atlas periodically prepared for its client, 4D, pursuant to the June 4, 1985 bookkeeping agreement between them, and which defendant Atlas was authorized by 4D to send to Citytrust, had nothing to do with the verification of the accounts receivable. That agreement did not obligate Atlas to verify such accounts unless specifically requested by 4D. Plaintiff Citytrust also did not submit any evidence that defendant Atlas's monthly computer reports were negligently prepared by it.

Nor has plaintiff Citytrust demonstrated that it ever relied to its detriment on defendant Atlas's monthly reports. Again the record shows that plaintiff Citytrust was aware at the time it agreed to provide a line of credit to 4D, that defendant Atlas's responsibilities under the June 4, 1985 agreement with 4D did not include verifying 4D's accounts receivable.

Pursuant to Atlas's agreement with 4D, 4D forwarded to Atlas copies of all invoices which 4D had posted to its customers, with defendant Atlas, in turn, merely recording the amount in terms of the invoices in its computer, as it did all payments by those customers, and thereafter advising plaintiff Citytrust of their receipt as requested by 4D Corp. When defendant Atlas confirmed to plaintiff Citytrust that it had received additional invoices from 4D, plaintiff Citytrust would then advance new funds to 4D under the terms of the line of credit.

To the extent that defendant Atlas played any role in plaintiff Citytrust's decision to advance funds to 4D, that role was simply an arithmetical function. It is undisputed that if

Citytrust desired 4D's accounts receivable to be verified before advancing funds, it would have to initiate that process itself.

Plaintiff Citytrust had been forewarned by its own auditor before 4D Corp. commenced its fraudulent scheme in March 1986, that verification was an absolute requirement if plaintiff Citytrust desired to be alerted of any fraud by 4D and that neither defendant Atlas nor plaintiff Citytrust were, in fact, verifying 4D's accounts receivable. Plaintiff, nevertheless, did not request that Atlas expand its duties to include verification until August 1986, well after 4D had generated fraudulent invoices that caused plaintiff Citytrust to advance more than $650,000 in uncollectable loans.

Plaintiff's claim of reliance is therefore limited to defendant's single act of alleged negligence in connection with the preparation of its August 27, 1986 report, which was the only report prepared at the special request of plaintiff Citytrust and it is undisputed that only two of the 50 invoices claimed by plaintiff Citytrust to be fraudulent were issued after August 27, 1986. Therefore, detrimental reliance by plaintiff Citytrust on defendant Atlas's verification procedures prior to that date was not shown. In addition, plaintiff Citytrust failed to show that it detrimentally advanced funds to 4D against the remaining two fraudulent invoices *after* plaintiff Citytrust had received defendant Atlas's August 27, 1986 report.

As noted, the IAS court determined that, although there was no contractual privity between plaintiff Citytrust and defendant Atlas, a triable issue of fact nevertheless existed as to whether plaintiff Citytrust was, in fact, a third-party beneficiary of the June 4, 1985 agreement between 4D and Atlas in denying summary judgment as to the second cause of action for breach of contract.

However, where nothing in the language of the contract suggest that the parties intended to confer a direct benefit on a purported third-party beneficiary or where there was no duty owing from the defendant to the purported third-party beneficiary, dismissal of such a third-party beneficiary claim has been upheld. *(See, Fourth Ocean Putnam Corp. v Interstate Wrecking Co.,* 66 NY2d 38, 43-45.)

In this case there was nothing in the agreement which created a right enforceable by plaintiff, or a right or duty imposed on Atlas intended to benefit plaintiff. There was no language in the agreement which clearly evinces the parties' intent to permit plaintiff Citytrust to recover monetary damages from defendant Atlas in the event of a breach. *(See,*

*Alicea v City of New York,* 145 AD2d 315.) In the June 4, 1985 agreement Atlas merely agreed to deliver to 4D's then unknown bank, thereafter designated as Citytrust, copies of monthly computerized reports which defendant Atlas generated directly for the use and benefit of 4D. The agreement clearly did not contractually obligate defendant to provide verifications of 4D's accounts receivable or to confirm with 4D's customers the amount of the indebtedness shown by the invoices, unless specifically requested.

Finally, contrary to the IAS court's finding, there were no triable issues of fact which might support the conclusion that a fiduciary relationship existed between defendant Atlas and plaintiff Citytrust, and therefore plaintiff's fourth cause of action for breach of fiduciary duty should also have been dismissed.

Where the parties have a confidential or fiduciary relationship and one relies upon a promise of future performance made by the party with the superior position, an action to recover for constructive fraud may be viable if the promise is broken. However, it is essential that such a fiduciary relationship be established and in purely business transactions, it must be shown the promiser has or should have, superior and accurate knowledge and "must have misled the plaintiff by false representations concerning the subject of his superior knowledge or expertise. Such claims are rarely sustained in New York". *(Brown v Lockwood,* 76 AD2d 721, 734.)

The relationship between Citytrust and Atlas with respect to the verification of 4D's accounts receivable was not one of special trust and confidence, but rather was merely a commercial arm's length relationship between two business entities experienced in the commercial lending field. Further, plaintiff Citytrust conceded, that as part of its business, it normally verified the accounts receivable of almost all its customers and that such verification was a regular technique in the banking industry. Thus, Atlas cannot be said to have possessed superior knowledge or expertise in this field. Concur—Sullivan, J. P., Wallach, Asch and Smith, JJ.