INFOSTAR INC., Dina Bedi and Chhaya Bedi, Plaintiffs,

v.

**WORCESTER INSURANCE COMPANY, Continental Casualty Insurance Company and The Hartford Steam Boiler Inspection and Insurance Company, Defendants.**

No. 95 Civ. 5753 (WCC).

United States District Court,
S.D. New York.

May 3, 1996.

---

Matarazzo Blumberg & Associates, P.C., New York City (Barbara A. Matarazzo, of counsel), for Plaintiffs.

Speyer & Perlberg, New York City (J. Gregory Carlock, of counsel), for Defendants Worcester Insurance Company and Continental Casualty Insurance Company.

Mound, Cotton & Wollan, New York City (Theodore E. Tsekerides, Frederic R. Mindlin, of counsel), for Defendant The Hartford Steam Boiler Inspection and Insurance Company.

WILLIAM C. CONNER, Senior District Judge:

On August 3, 1995, plaintiffs Infostar, Inc. ("Infostar"), Dina Bedi and Chhaya Bedi filed this action against defendants Continental Casualty Company ("Continental") and The Hartford Steam Boiler Inspection and Insurance Company ("Hartford").[1] Plaintiffs have asserted, *inter alia,* claims against both defendants under N.Y.Gen.Bus.L. § 349, which prohibits deceptive acts or practices in the conduct of business. Defendant Hartford has made a motion under Rule 12(b)(6) and defendant Continental has made a motion under Rule 12(c) to dismiss those claims. All of the parties have submitted affidavits and documentary evidence that go beyond the pleadings. Therefore, we treat these motions as motions for summary judgment. *See* Fed.R.Civ.P. 12(b), (c). For the reasons set forth below, defendants' motions are granted.

## BACKGROUND

This action arises out of a fire that occurred on September 3, 1994, on the premises of a computer store operated by plaintiffs. Continental insured Infostar against the loss of the contents of the store, up to a value of $2,000,000, and against the loss of income from the business for up to twelve months. Plaintiffs allege that Infostar lost $1,067,-570.00 from damage to the contents of the store and $422,008.00 from loss of income. Hartford insured Infostar against the loss of

---

1. Plaintiffs voluntarily dismissed a third defendant, Worcester Insurance Company, by stipulation dated November 16, 1995.

contents and expenses, up to $51,000, and for loss of income up to $10,000.[2] Plaintiffs allege that Infostar's losses under this policy exceed the policy amount. Plaintiffs assert that although Infostar filed timely proofs of loss following the fire, Continental and Hartford have not paid Infostar the sums due. Hartford contends that it did not pay Infostar's claim because Infostar never filed a proper proof of loss. Continental asserts that it did not pay Infostar's claim because it was investigating the possibility that the fire was caused by arson committed by plaintiffs. Infostar has asserted claims seeking payment under the policies.

Plaintiffs have also brought claims under § 349 based on allegations that Continental and Hartford have acted in bad faith and have engaged in unfair settlement practices in violation of N.Y.Ins.L. § 2601 and the regulations promulgated thereunder. Specifically, plaintiffs assert that defendants have claimed that the fire was caused by arson, although they have no reason to believe that arson occurred, and that defendants have intentionally delayed settlement.

## DISCUSSION

Summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has held that the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those [materials] which it believes demonstrate the absence of a genuine issue of material fact." *Id.*, at 323, 106 S.Ct. at 2553. It may discharge that burden merely by "pointing out to the district court [ ] that

there is an absence of evidence to support the nonmoving party's case." *Id.*, at 325, 106 S.Ct. at 2554; *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223–24 (2d Cir.1994). In order to defeat summary judgment, the nonmoving party must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). No genuine issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. *See id.*, at 248–49, 106 S.Ct. at 2510–11.

■ N.Y.Gen.Bus.L. § 349, which is part of New York's consumer protection statutes, provides that:

(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

\*    \*    \*    \*    \*    \*

(h) [A]ny person who has been injured by reason of any violation of this section may bring an action ... to recover his actual damages or fifty dollars, whichever is greater.... The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

In *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 532, 647 N.E.2d 741, 744 (N.Y.1995), the New York Court of Appeals stated that "section 349 is directed at wrongs against the consuming public.... Thus, as a threshold matter, plaintiffs claiming the benefit of section 349 ... must charge conduct of the defendant that is con-

---

**2.** According to Hartford, the policy that it issued covered only the computer equipment that plaintiffs used in running their business. Hartford

maintains that Continental's policy covered the computer equipment available for sale or lease to the store's customers.

sumer-oriented." A plaintiff is not required to prove that the complained-of conduct is recurring, but instead "must demonstrate that the acts or practices have a broader impact on consumers at large." *Id.* Thus, "the deceptive act or practice may not be limited to just the parties." *Teller v. Bill Hayes, Ltd.,* 213 A.D.2d 141, 630 N.Y.S.2d 769, 772 (App.Div.1995). For example, § 349 does not apply to private contract disputes that are unique to the parties. *See Oswego,* 623 N.Y.S.2d at 532, 647 N.E.2d at 744.

Defendants contend that there is no evidence that Continental and Hartford's actions had, or could have, an impact on anyone other than plaintiffs. Hence, they argue that this case is simply a private coverage dispute between the parties and that we should grant summary judgment dismissing plaintiffs' § 349 claims. Plaintiffs counter that in order to satisfy the "consumer-oriented" requirement, they must only demonstrate that the transaction in question is not a "one-shot deal." They contend that insurance policies are contracts of adhesion created for a class of consumers and that insurers have large claims departments to handle their relationships with many consumers. Therefore, they argue, the acts of insurance companies in servicing their policies are consumer-oriented. Essentially, therefore, plaintiffs argue that an insurance company's actions in settling a claim under a policy are always consumer-oriented. We disagree.

■ The New York Court of Appeals has recently held that a coverage dispute between an insurer and its insured was "essentially a 'private' contract dispute over policy coverage and the processing of a claim which is unique to these parties, not conduct which affects the consuming public at large." *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 291, 662 N.E.2d 763, 771 (N.Y.1995). That case is not squarely on point, as the court's reasoning emphasized the sophistication of the parties and the bargaining leverage that the insured, a large university, possessed. The court also noted that the policy under which the insured sought coverage was not a standard policy but had been, at least in part, specially negotiated by the plaintiff's broker. None of these factors is present in the instant case. Nevertheless, it is clear that an insurance company's actions in settling a claim are not always consumer-oriented.

The *New York University* court explained, however, that relief under § 349 "is not necessarily foreclosed by the fact that the transaction involved an insurance policy...." *Id.,* at 290–91, 662 N.E.2d at 770–71. In support of this proposition, it cited *Riordan v. Nationwide Mutual Fire Ins. Co.,* 977 F.2d 47 (2d Cir.1992), in which plaintiffs, who sought coverage under their homeowners policy following a fire that damaged their home, won a jury verdict in their favor on their § 349 claim because Nationwide intentionally delayed settlement of their claim. Clearly, factual similarities exist between the situation presented in *Riordan* and the allegations that plaintiffs have made. Both sets of plaintiffs purchased a standard insurance policy from a large insurer, and both experienced problems in settling claims under the policy. The *Riordan* court, however, did not hold that the "consumer-oriented" requirement was satisfied simply because the plaintiffs were consumers who made a claim under a standard insurance policy. Instead, it is apparent that the plaintiffs pled and proved that Nationwide followed a policy or practice of engaging in unfair settlement practices.

As the district court explained in denying Nationwide's motion to dismiss the plaintiffs' § 349 claim:

> [P]laintiffs expressly allege the existence of a claim settlement policy designed to deceive certain categories of policyholders; in other words, the public at large. Plaintiffs allege a direct causal connection between defendant's alleged illegal claim settlement practice and Nationwide's avoidance of its obligations under the [p]olicy and therefore set forth precisely such ... allegations of injury to the public at large as are required to sustain their claim under the General Business Law.... The public injury inherent in such a scheme, if proven, is unquestionable since the alleged deceptive practices go to the very essence of the services Nationwide provides to the public on a grand scale....

*Riordan v. Nationwide Mutual Fire Ins. Co.,* 756 F.Supp. 732, 739 (S.D.N.Y.1990), *aff'd in relevant part, question certified in part,* 977 F.2d 47 (2d Cir.1992). The Second Circuit, in upholding the jury's verdict in favor of plaintiffs, noted that the Riordans had presented ample evidence that Nationwide had applied the same unfair settlement practices to other policyholders. *See Riordan,* 977 F.2d at 53. That evidence satisfied the requirement that Nationwide's conduct have ramifications for the general public and, in accordance with the law at that time, the requirement that plaintiffs establish that Nationwide's conduct was recurring. *See id.* Of course, plaintiffs need no longer meet the latter standard, but they must still satisfy the former. *See Oswego,* 623 N.Y.S.2d at 532, 647 N.E.2d at 744.

Under certain circumstances, it is easy to see how a defendant's act could be consumer-oriented but not part of a pattern of conduct. For example, if an insurance company distributes misleading promotional literature concerning a particular type of policy, that deceptive act could have a broad impact on the general public without being the result of a company policy of engaging in misleading advertising. *See* Richard A. Givens, Practice Commentaries, McKinney's Consolidated Laws of New York Annotated, Book 19 (Supp.1996), §§ 349–50, at 184. In a case like this one, however, in which the complained-of acts concerned only the parties, it is difficult to see how defendants' acts could have ramifications for the public at large unless their conduct was consistent with a policy or practice applicable to other policyholders.

■ Be that as it may, while plaintiffs need not prove that defendants' deceptive acts were recurring in order to recover under § 349, they must somehow demonstrate, whether through evidence concerning defendants' generally applicable settlement practices or otherwise, that defendants' conduct has a broad impact on the public at large. The mere fact that other consumers have purchased similar policies and that some of them, presumably, have dealt with defendants' claims departments is not, standing alone, sufficient to meet this standard. Plaintiffs have failed to present any evidence

of specific facts from which a reasonable jury could conclude that the actions of Continental and Hartford affected or could affect the general public. Therefore, defendants are entitled to summary judgment dismissing plaintiffs' claims under § 349.

■ We recognize that defendants' motions were filed early in this case, before plaintiffs had the opportunity to conduct discovery. Summary judgment should only be entered on the ground that the nonmovant's proof is insufficient when the nonmovant has had an adequate opportunity to conduct discovery. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The court should not permit the nonmoving party to be " 'railroaded' by a premature motion for summary judgment." *Id.,* at 326, 106 S.Ct. at 2554. The Supreme Court has indicated that "[a]ny potential problem with such premature motions can be adequately dealt with under Rule 56(f) . . . ." *Id.*

■ In this case, we believe that granting summary judgment at this time is not premature. First, plaintiffs have taken the position that an insurance company's actions in settling a claim are inherently consumer-oriented. Discovery or the lack thereof does not impact plaintiffs' ability to make this argument. Second, although plaintiffs were clearly aware that the court might treat defendants' motions under Rules 12(b)(6) and 12(c) as motions for summary judgment, *see* Plaintiffs' Memorandum of Law, at 1, plaintiffs have not indicated that they lacked information necessary to oppose summary judgment. Accordingly, they clearly have not met the Second Circuit's standard for granting relief under Rule 56(f). *See Meloff v. New York Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir.1995). Under these circumstances, summary judgment is appropriate.

## CONCLUSION

For the reasons set forth above, we grant defendants' motions for summary judgment dismissing plaintiffs' claims under N.Y.Gen. Bus.L. § 349.

SO ORDERED.