Arthur GREENSPAN, M.D., and Scott Denny, D.C., Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

96 Civ. 1726 (LLS).

United States District Court, S.D. New York.

Sept. 9, 1996.

Milberg Weiss Bershad Hynes & Lerach, New York City (Lee Shalov, Edith M. Kallas, of counsel), Meltzer Lippe Goldstein Wolf Schlissel & Sazer, Mineola, NY (Stephen M. Breitstone, of counsel), for Plaintiffs.

Brooks McNally Whittington Platto & Vitt, Norwich, VT (Charles Platto, of counsel), Rosenman & Colin, New York City (Alan I. Raylesberg, of counsel), Allstate Insurance Company, Northbrook, IL (Phil Schuster, James Falvey, of counsel), for Defendant.

**Opinion and Order**

STANTON, District Judge.

Defendant Allstate Insurance Company ("Allstate") moves pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) for dismissal of the complaint.

### BACKGROUND

The complaint alleges the following:

Under New York's no-fault insurance law (the New York Comprehensive Motor Vehicle Insurance Reparations Act, *see* N.Y.Ins.L. §§ 5101 *et seq.*), victims of motor vehicle accidents may be reimbursed by an insurance carrier for medical expenses, among other things. Typically, victims assign their right to receive no-fault benefits to their health care provider, who then seeks payment from the insurer. Plaintiffs are health care providers in New York State who submitted claims to Allstate between January 1, 1990 and February 9, 1996 under no-fault policies it had issued to persons plaintiffs had treated.

Plaintiffs claim that Allstate has engaged in a variety of practices designed to deny or delay reimbursement for properly submitted and documented claims for medically necessary services. According to the complaint, Allstate:

(1) falsely denies having received claims;

(2) mails claimants letters stating that payment will be delayed "pending further investigation" but refuses to estimate when the investigation will be completed;

(3) notifies claimants that additional information is needed to process a claim even though all necessary information and documentation has been provided;

(4) demands an excessive amount of documentation which is not required under the no-fault law;

(5) reduces reimbursement for office visits without explaining the basis for the reduction;

(6) to determine whether treatments are justified, uses computerized guidelines which are not supported by state law or regulations, or by any medical or health care professional society;

(7) denies claims on the ground that "concurrent care" has been rendered even though the treatment in question was necessary and different from other services provided to the patient;

(8) hires outside auditors who disallow valid claims;

(9) employs independent physicians who reduce the amount of claims without cause; and

(10) employs independent medical examiners who deny claims after performing perfunctory examinations of the patient or reduce claims without cause.

The complaint asserts claims for breach of contract, fraud, unjust enrichment and imposition of a constructive trust, and for violation of section 349 of New York's General Business Law. Plaintiffs seek injunctive relief and compensatory and punitive damages.

### DISCUSSION

**A. Standard**

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

## B. Fraud

Under New York law, the elements of fraud are: a representation of a material fact, falsity, scienter, reliance and injury. *New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 289, 662 N.E.2d 763, 769 (Ct.App.1995). Allstate argues that the complaint does not allege reliance or an actionable misrepresentation.

The complaint alleges that Allstate misrepresented "to plaintiffs and members of the Class that it would conduct its business activities as a legitimate No–Fault insurer and would reimburse plaintiffs and other members of the Class in a timely fashion for rendering necessary medical treatment and other services to patients." (Complaint, ¶ 31.) It also alleges that Allstate made misrepresentations to plaintiffs concerning non-receipt of claims, the need for additional documentation and further review, and the medical necessity of treatment. (*See id.*, ¶¶ 2, 18(a)–(d), 31.)

In reliance on those misrepresentations, plaintiffs say, they rendered medical treatment to patients entitled to receive benefits from Allstate. (*Id.* ¶ 33.) However, all of the misrepresentations regarding submitted claims were made after the services were rendered, so plaintiffs could not have relied on them in deciding to provide treatment. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2nd Cir.1993) (allegedly fraudulent statement made after contracts had been signed could not have induced contract). The sole pre-treatment misrepresentation— that Allstate would honor its contractual obligations and obey the law—simply restates plaintiffs' breach of contract claim and does not support a fraud claim. *See Continental*, 639 N.Y.S.2d at 288–89, 662 N.E.2d at 768–69 (allegations that defendant insurer misrepresented its integrity and intention to pay claims, and that insurer conducted "sham" investigation, did not state claim for fraud).

Nor does the complaint satisfy Rule 9(b)'s heightened pleading standard, which requires that "the circumstances constituting fraud or mistake shall be stated with particularity." In this circuit, a complaint alleging fraud must specify the false or misleading statement, explain how the plaintiff contends the statement was fraudulent, state when and where the statement was made, and identify the speaker. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2nd Cir.1989). It must link the allegedly fraudulent statement to an individual speaker; attribution to a corporate entity or its representative is insufficient. *Mills*, 12 F.3d at 1175; *Lomaglio Assocs. Inc. v. LBK Marketing Corp.*, 876 F.Supp. 41, 44 (S.D.N.Y.1995).

The complaint does not provide even approximate dates for any of the alleged misrepresentations. Nor does it sufficiently identify who made the alleged misrepresentations, which are attributed only to Allstate.

Accordingly, the fraud claims are dismissed.

## C. Breach of Contract

The complaint alleges that Allstate breached the insurance contracts by refusing to reimburse plaintiffs for necessary services, reducing claims without justification, and delaying and impeding reimbursement of claims. (Complaint, ¶ 26.) Those actions, the complaint alleges, breached the policies and their implied covenants of good faith and fair dealing.

Allstate argues that the complaint fails to state a breach of contract claim because it does not specify the provisions allegedly breached. The complaint alleges that the policies obliged Allstate to pay benefits for basic economic loss, including necessary medical expenses. According to the complaint, plaintiffs performed under the policies, and Allstate breached them by refusing to pay, and by reducing and delaying reimbursement to which plaintiffs were entitled. (*See* Complaint, ¶¶ 24–26.) Those allegations are sufficient. *See Reuben H. Donnelley Corp. v. Mark I Marketing Corp.*, 893 F.Supp. 285, 290–91 (S.D.N.Y.1995) ("It is enough that the complaint contains 'a short and plain statement of the claim' sufficient to put the defendant on notice of the grounds for which plaintiff seeks relief.") (quoting Fed.R.Civ.P. 8(a)(2)).

The complaint also states a claim for a violation of the implied covenant of

good faith and fair dealing. Under New York law, every contract contains a covenant of good faith and fair dealing, so neither party may do anything which destroys or injures the other's right to receive the fruits of the contract. *E.g., M/A COM Security Corp. v. Galesi,* 904 F.2d 134, 136 (2nd Cir. 1990).[1] Processing claims in bad faith and refusing to pay covered claims may breach that covenant. *See Continental,* 639 N.Y.S.2d at 289, 662 N.E.2d at 769 (allegation that insurer investigated claim in bad faith and failed to pay covered claim states claim for breach of implied covenant of good faith and fair dealing).

Allstate also contends that plaintiffs cannot sue for breach of the insurance contracts because (1) the claim is preempted by section 2601 of New York's Insurance Law, which prohibits unfair claim settlement practices, and does not afford a private right of action; and (2) the exclusive forum for disputes involving claim processing and payment is the simplified arbitration provided for in section 5106(b) of the Insurance Law.

### 1. *Preemption*

Section 2601(a) of the Insurance Law provides:

(a) No insurer doing business in this state shall engage in unfair claim settlement practices. Any of the following acts by an insurer, if committed without just cause and performed with such frequency as to indicate a general business practice, shall constitute unfair claim settlement practices:

(1) knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue;

(2) failing to acknowledge with reasonable promptness pertinent communications as to claims arising under its policies;

(3) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under its policies;

(4) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear....; or

(5) compelling policyholders to institute suits to recover amounts due under its policies by offering substantially less than the amounts eventually recovered in suits brought by them.

There is no private right of action under section 2601. *See Rocanova v. Equitable Life Assurance Society,* 83 N.Y.S.2d 603, 612 N.Y.S.2d 339, 343, 634 N.E.2d 940, 944 (Ct. App.1994). The Superintendent of Insurance is empowered to investigate and hold a hearing to determine whether an insurer has violated section 2601, and to impose monetary penalties if a violation is found. *See* N.Y.Ins.L. §§ 2404–05 (superintendent is empowered to investigate and hold hearing to determine whether insurer is committing "defined violation"); *id.* § 2402(b) ("defined violation" includes violation of section 2601); *id.* § 109 (authorizing superintendent to impose monetary penalties). Allstate urges that those provisions preempt a common-law breach of contract claim, at least one in which the alleged breaches are also unfair claim settlement practices.

General rules of statutory construction require a "clear and specific legislative intent to override the common law." *Hechter v. New York Life Ins. Co.,* 46 N.Y.2d 34, 412 N.Y.S.2d 812, 815, 385 N.E.2d 551, 554 (Ct. App.1978). No provision of the Insurance Law states that section 2601 and its associated enforcement provisions are intended to preempt common-law rights. *Contrast* N.Y.Work.Comp.L. § 11 ("The liability of an employer prescribed by the last preceding paragraph shall be exclusive and in place of any other liability whatsoever, to such employee...."). On the contrary, section 109 provides, "Every penalty imposed by this section shall be in addition to any penalty or forfeiture otherwise provided by law." N.Y.Ins.L. § 109.

The legislative history of section 2601 makes plain that the administrative remedy was designed to supplement rather than preempt individual insureds' common-law

---

**1.** That covenant is separate from the requirement, imposed by New York's Insurance Law, that insurers deal with insureds fairly and in good faith. *See* N.Y.Ins.L. § 2601.

rights. A memorandum issued by the governor's office about the proposed bill stated:

> While courts are an appropriate body to resolve individual disputes, the Insurance Department should be given power concerning claim settlement practices generally—not as they may reveal themselves in any particular case, but as they appear after an overall, statistical review ... The proposed bill, without empowering the Department to resolve individual claims and without infringing upon the proper functions of the judiciary, would define unfair claims practices and give the Department a balanced range of sanctions....

Governor's Memorandum, 1970 N.Y.Legislative Annual 306–07.

Another governor's memorandum, issued after the bill's enactment, stated, "While the bill would leave to the courts the settlement of individual disputes, it would give the Insurance Department a strong tool to prevent misuse of the legal process and to deal with claims practices that are harmful to the public." Governor's Memorandum, *id.* at 489.

The different liability standards also support the conclusion that they were intended to complement one another. Violation of section 2601 does not rest upon an individual breach of an insurance policy; rather, an insurer "engage[s] in unfair claim settlement practices" only if it commits an enumerated act "with such frequency as to indicate a general business practice."

Accordingly, section 2601 does not preempt common-law breach of contract claims, even if the alleged breaches consist of conduct which cumulatively meets the statutory definition of an unfair claim settlement practice.

### 2. *Exclusivity of Arbitration Remedy*

■ Section 5106(b) of the Insurance Law provides:

> Every insurer shall provide a claimant with the option of submitting any dispute involving the insurer's liability to pay first party benefits, or additional first party benefits, the amount thereof or any matter which may arise pursuant to subsection (a) hereof to arbitration pursuant to simplified

procedures to be promulgated or approved by the superintendent.

That provision gives an insured the option of arbitrating its claim, but does not preclude him from litigating in court. *See, e.g., Marangiello v. Kamak,* 64 A.D.2d 624, 406 N.Y.S.2d 879, 880 (2nd Dep't 1978). Thus, arbitration is not the exclusive forum for disputes over the payment of no-fault insurance claims.

\*   \*   \*   \*   \*   \*

Allstate's motion for dismissal of plaintiffs' breach of contract claims is denied.

### D. General Business Law Section 349

■ Section 349 of New York's General Business Law makes unlawful deceptive acts or practices in conducting a business or furnishing a service. Allstate argues that section 349 should not apply to claims involving the no-fault insurance system because section 2601 of the Insurance Law preempts the section 349 claim, and because the no-fault system is highly regulated and provides its own dispute-resolution mechanism. The preemption argument is belied by the language of section 349, which states, "This section shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state...." N.Y.Gen.Bus.L. § 349(g). *See Riordan v. Nationwide Mutual Fire Ins. Co.,* 977 F.2d 47, 51–52 (2nd Cir.1992) (rejecting argument that New York's pervasive regulation of unfair insurance claim settlement practices preempted claim under section 349 based on such practices).

■ The highly regulated nature of the no-fault insurance industry does not preclude plaintiffs' claims under section 349. According to the Practice Commentary, "General Business Law §§ 349–350 contain no exceptions or exemptions for regulated industries." (Richard A. Givens, Supplementary Practice Commentaries, §§ 349–50, McKinney Supp. 1996).

■ Allstate also argues that the conduct alleged in the complaint is not consumer-oriented. Parties asserting a claim under section 349 must allege consumer-oriented conduct. *Oswego Laborers' Local 214 Pen-*

*sion Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 623 N.Y.S.2d 529, 532, 647 N.E.2d 741, 744 (Ct.App.1995).

An insurance company's actions in settling a claim are not inherently consumer-oriented. *Infostar v. Worcester Ins. Co.,* 924 F.Supp. 25, 29 (S.D.N.Y.1996). Courts consider the amount of the claim, the relative sophistication and bargaining power of the parties, and whether the policy was standard or negotiated in determining whether an insurer's allegedly deceptive conduct is within section 349's scope. *See New York University v. Continental Ins. Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 290–91, 662 N.E.2d 763, 770–71 (Ct.App.1995); *Infostar,* 924 F.Supp. at 28–29. The plaintiff must allege facts showing injury or potential injury to the public. *See Oswego,* 623 N.Y.S.2d at 532, 647 N.E.2d at 744; *Tinlee Enterprises, Inc. v. Aetna Casualty & Surety Co.,* 834 F.Supp. 605, 609–10 (E.D.N.Y.1993).

Here, the amount of plaintiffs' claims for no-fault insurance benefits, individually, are much smaller than the amount at issue in *Continental,* where the policy had a $10 million limit and the insured suffered a loss of $1.6 million. *See* 639 N.Y.S.2d at 286, 662 N.E.2d at 766; Complaint, ¶ 19(a) (objecting to reduction of $10.51 per office visit). Plaintiffs' patients, who purchased the policies, are not predominantly sophisticated consumers of insurance like the university in *Continental* or the concert promoter in *Genesco Entertainment v. Koch,* 593 F.Supp. 743 (S.D.N.Y.1984) (city's conduct in cancelling lease of stadium not consumer-oriented). Plaintiffs state that both the insurance policies and the claim forms are standard.

The complaint alleges that Allstate's deceptive practices are designed to frustrate the efforts of physicians and other health care providers to obtain reimbursement. However, Allstate argues that health care providers are not the public, and that the complaint thus alleges no public harm. Allstate relies on *Azby Brokerage, Inc. v. Allstate Insurance Company,* in which the plaintiff insurance brokers claimed the defendant insurer "maliciously pirated away" high risk automobile insurance accounts and commissions and assigned them to Allstate-affili-

ated brokers, in some cases without the consent of the insured. The court held that because the only injury alleged was loss of commission income, and the brokers alleged no harm to consumers or the public interest, the claim did not fall within section 349's coverage. 681 F.Supp. 1084, 1085, 1089 (S.D.N.Y.1988).

Here, although Allstate's deceptive acts allegedly impede plaintiffs' ability to earn a living, they may also affect the public interest. The purpose of the no-fault insurance law was to institute an inexpensive, efficient method of compensating accident victims. *See Montgomery v. Daniels,* 38 N.Y.2d 41, 378 N.Y.S.2d 1, 7–8, 340 N.E.2d 444, 448–49 (Ct.App.1975). Deliberately erecting barriers to reimbursement and imposing additional social costs may frustrate that objective and harm the public. Allstate's conduct may also affect the ability of accident victims to obtain medical treatment. *See also Riordan,* 977 F.2d at 53 ("[T]he Riordans presented ample evidence to prove that Nationwide engaged in similar deceptive settlement practices against other policyholders, thus satisfying the GBL § 349 requirement that the conduct be recurring or have ramifications for the general public.").

However, no allegations of injury to the public appear in the complaint. Accordingly, the claims under section 349 are dismissed, with leave to replead within 60 days.

**E. Unjust Enrichment/Constructive Trust**

New York law requires that a plaintiff establish four elements before a court will impose a constructive trust: (1) a confidential or fiduciary relationship, (2) an express or implied promise, (3) a transfer of the subject property in reliance on the promise, and (4) unjust enrichment. *United States v. Coluccio,* 51 F.3d 337, 340 (2nd Cir.1995).

A fiduciary relationship arises when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains influence or assumes control and responsibility. *Reuben H. Donnelley Corp. v. Mark I Marketing Corp.,* 893 F.Supp. 285, 289 (S.D.N.Y.1995). A fiduciary has also

been defined as one who transacts business or handles money or property for the benefit of another person. *Board of Managers v. Fairway at North Hills,* 193 A.D.2d 322, 603 N.Y.S.2d 867, 869 (2nd Dep't 1993).

 The complaint alleges that Allstate has been unjustly enriched by its policy of denying or delaying reimbursement, and that "because of the relationship between the parties" a constructive trust should be imposed. (Complaint, ¶ 40.) Those allegations do not state a claim for imposition of a constructive trust. Standing alone, a contractual relationship does not give rise to fiduciary duties. *See, e.g., Liebowitz v. Elsevier Science Ltd.,* 927 F.Supp. 688, 711 (S.D.N.Y.1996); *Citytrust v. Atlas Capital Corp.,* 173 A.D.2d 300, 570 N.Y.S.2d 275, 279 (1st Dep't 1991). The complaint sets forth no basis for inferring a fiduciary or confidential relationship between plaintiffs and Allstate.

Accordingly, plaintiffs' claim for imposition of a constructive trust is dismissed.

### F. Punitive Damages

Allstate moves to strike plaintiffs' demand for punitive damages. A party seeking punitive damages for a breach of contract[2] must show that (1) the defendant's conduct is actionable as an independent tort, (2) the tortious conduct demonstrates "such wanton dishonesty as to imply criminal indifference to civil obligations," (3) the conduct was directed at the plaintiff, and (4) the conduct is part of a pattern directed at the general public. *Rocanova v. Equitable Life Assurance Society,* 83 N.Y.2d 603, 612 N.Y.S.2d 339, 342–43, 634 N.E.2d 940, 943–44 (Ct.App.1994); *Continental,* 639 N.Y.S.2d at 287, 662 N.E.2d at 767.

Plaintiffs have no remaining tort claim, the fraud claim having been dismissed. *See supra* part B. Their claim for breach of the implied covenant of good faith and fair dealing does not support the punitive damages demand. *See Rocanova,* 612 N.Y.S.2d

at 343, 634 N.E.2d at 944 ("Rocanova cannot maintain a claim for punitive damages based on his undismissed cause of action for breach of the implied covenant of good faith and fair dealing.").

Plaintiffs' demand for punitive damages is stricken.

### CONCLUSION

Allstate's motion for dismissal of the complaint is granted in part and denied in part. The fraud and unjust enrichment claims, and the claims under section 349 of New York's General Business Law, are dismissed. The breach of contract claims are not dismissed.

Plaintiffs have leave to replead within 60 days.

---

2. Even if plaintiffs replead their section 349 claims, that statute does not authorize an award of punitive damages. *See* N.Y.Gen.Bus.L. § 349(h) (authorizing recovery of actual damages and giving court discretion to increase damage award to an amount not exceeding treble actual damages or $1000).