[603 NYS2d 867]

BOARD OF MANAGERS OF THE FAIRWAYS AT NORTH HILLS CONDOMINIUM, Respondent v FAIRWAY AT NORTH HILLS et al., Appellants, et al., Defendants.

Second Department, November 1, 1993

### APPEARANCES OF COUNSEL

*Block, Amelkin & Hamburger,* Smithtown *(Richard Hamburger* and *Lane T. Maxson* of counsel), for appellants.

*Cohen & Warren, P. C.,* Smithtown, for respondent.

### OPINION OF THE COURT

MILLER, J.

The issue of primary concern on this appeal, and one of first impression in New York, is whether the individual members of the first board of managers of a condominium development, who were appointed by the sponsor prior to the sale of any condominium units, owe fiduciary obligations to the eventual purchasers of those units. We find that such sponsor-appointed board members do owe fiduciary duties to unit owners, and that, accordingly, the Supreme Court correctly denied the appellants' motion insofar as it sought to dismiss the eighth cause of action to recover damages for breach of those fiduciary duties.

The facts underlying this appeal stem from the development and construction of The Fairways at North Hills Condominium, located in the Incorporated Village of North Hills in Nassau County. The plaintiff is the current board of managers of the condominium. The defendants are the sponsor of the condominium *(see, Board of Mgrs. of Fairways at N. Hills Condominium v Fairways at N. Hills,* 150 AD2d 32, 34), as well as Charles Faulkner, Harvey Auerbach and Steve Auerbach, who constituted the initial board of managers appointed by the sponsor.

The complaint asserted numerous causes of action, stemming, *inter alia,* from the alleged negligent construction of the condominium units, negligent design and construction of common areas, and underevaluation of maintenance costs, contingency reserves, and common charges. The plaintiff advances various causes of action against the defendants sounding in fraud, negligence, breach of contract, and, as against the individual sponsor-appointed board member defendants, breach of fiduciary duties. On the parties' prior appeal, this Court dismissed, as against the defendants First Union Savings Bank and Charles Faulkner, the first two causes of action, which alleged violations of the Martin Act *(see,* General Business Law art 23-A), because no such private right of action is available *(see, Board of Mgrs. of Fairways at N. Hills Condominium v Fairways at N. Hills, supra).* All causes of action against individual defendant Charles Faulkner except the eighth cause of action were also dismissed, as the claims improperly sought to impose personal liability upon him for alleged misdeeds committed by him in his capacity as a corporate officer. In declining to dismiss the eighth cause of action, this Court noted that issues of fact existed as to whether Faulkner and the other members of the first board of managers had breached their fiduciary duties to the condominium.

On this appeal, initial board members Charles Faulkner, Harvey Auerbach, and Steve Auerbach argue, *inter alia,* that they owed no fiduciary duty to the condominium and to the unit owners because all of their loyalty was owed to the sponsor that appointed them. In consequence, they insist, they may not be held personally liable for their alleged failure to ascertain the condition of the common areas, failure to correct the deficient construction of the units, failure to determine the cash requirements for the purpose of calculating accurate maintenance expenses, and failure to establish an adequate contingency reserve to offset unforeseen expenses. Nor, they contend, may they be individually called to account for any alleged self-dealing in their failure to address the defective construction of the common areas, and in their failure to increase the contingency reserves at a time when numerous units were still unsold, and when the sponsor therefore remained liable for a considerable proportion of the repair and reconstruction assessment.

We find, contrary to the appellants' assertions, that a fiduciary duty on the part of the initial board of managers vis-à-

vis the condominium and its unit owners came into being at the time of the sale of the first condominium unit (cf., Northridge Coop. Section No. 1 v 32nd Ave. Constr. Corp., 2 NY2d 514; Vermeer Owners v Guterman, 169 AD2d 442, 445-446, affd 78 NY2d 1114). The Board is by definition in a "fiduciary" relationship with the unit owners, because a "fiduciary" is one who transacts business, or who handles money or property, which "is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part" (Black's Law Dictionary 625 ["fiduciary capacity"] [6th ed 1990]). The "fiduciary" duty contemplated here is akin to that enunciated in Business Corporation Law § 717, namely, that the members of an initial board of managers of a condominium must perform their duties "in good faith and with that degree of care which an ordinary prudent person in a like position would use under similar circumstances".

The first board of managers of a condominium, synonymous as it often is with the sponsor, and linked with the sponsor's legitimate pursuit of lawful profits, assumes a dual role. On the one hand, it "is vested with great power over the property interests of unit owners," (Uniform Condominium Act § 3-103, comment 1 [7 ULA 505]) while at the same time it receives its authority from the profit-motivated sponsor. In consequence, a condominium's first board of managers is subject to "a great potential for conflicts of interest," such that "a very high standard of duty" must be imposed upon it to ensure that its members do not gear their decisions to benefit the sponsor at the expense of the association or its members (Uniform Condominium Act § 3-103, comment 1 [7 ULA 505]; Shore Terrace Coop. v Roche, 25 AD2d 666).

The imposition of such a duty is particularly warranted where the sponsor or developer retains essentially total control over the "planned community" for a substantial period of time during its developmental stages—here, for example, according to the offering plan and the by-laws, for the first two years or until 51% of the condominium's 48 homes were sold, whichever occurred first (see, Natelson, Mending the Social Compact: Expectancy Damages for Common Property Defects in Condominiums and Other Planned Communities, 66 Ore L Rev 109, 116 [1987]; Hyatt and Rhoads, Concepts of Liability in the Development and Administration of Condominium and Home Owners Associations, 12 Wake Forest L Rev 915, 973-

975 [1976]). It is undisputed that between 1984 and 1986, the board of managers was charged with the governing of all of "the affairs of the Condominium" on behalf of the homeowners. Pursuant to the terms of the offering plan and by-laws, during the condominium's first two years of operation, the first board of managers was empowered, *inter alia,* to determine and levy common charges, to increase such charges, to vote special assessments, and to expend those assessments to maintain, care for, and preserve the homes, buildings and other common elements of the community. It was incumbent upon the board to maintain, repair, and replace common elements at the expense of the condominium, and periodically to fix, collect, and allocate the contributions necessary for the continued operation of the condominium. Consistent with New York law, the by-laws provided that the board would be free of liability to the homeowners for honest but imperfect exercises of its business judgment *(see, Schoninger v Yardarm Beach Homeowners' Assn.,* 134 AD2d 1; *Allen v Murray House Owners Corp.,* 174 AD2d 400, 404), while acknowledging that board members remained liable to unit owners for "wilful misconduct or bad faith". Arguably, then, by the very terms of its by-laws, a fiduciary duty was imposed upon the sponsor-appointed managers which would make them liable to the plaintiff if the latter succeeds in proving its allegations of self-dealing and bad faith.

In recognizing that in general a fiduciary duty subsists between a condominium's initial, sponsor-appointed board of managers and the unit purchasers, we perceive a clear analogy with the board of directors of a cooperative corporation, which, because it is entrusted with the responsibility of protecting its shareholders' interests, has been found by New York courts to owe shareholders a fiduciary duty *(see, Matter of Levandusky v One Fifth Ave. Apt. Corp.,* 75 NY2d 530, 538; *Straus v 345 E. 73 Owners Corp.,* 181 AD2d 483; *Aronson v Crane,* 145 AD2d 455, 456; *Bernheim v 136 E. 64th St. Corp.,* 128 AD2d 434; *Demas v 325 W. End Ave. Corp.,* 127 AD2d 476, 478). However, neither New York's Condominium Act *(see,* Real Property Law art 9-B) nor New York case law has squarely addressed the issue of whether a *condominium's* first board of managers owes the condominium and its unit owners a fiduciary duty.

It is worthy of note that in several other jurisdictions a fiduciary duty has been expressly imposed upon the sponsor-appointed members of condominium managing boards. Some

States have established the duty by statute, modeled after the Uniform Condominium Act (Uniform Condominium Act § 3-103 [a]), which has not yet been adopted in New York. Thus, for example, Alabama's statutory scheme provides that the members of the executive board of a condominium association are "required to exercise (i) if appointed by the [developer], the care required of fiduciaries of the unit owners * * * and (ii) if elected by the unit owners * * * ordinary and reasonable care" (Ala Code § 35-8A-303 [a]). Similarly, a North Carolina statute provides that the members of the executive board of a condominium "shall be deemed to stand in a fiduciary relationship to the association and the unit owners and shall discharge their duties in good faith, and with that diligence and care which ordinarily prudent men would exercise under similar circumstances in like positions" (NC Gen Stat § 47C-3-103 [a]). A Hawaii statute provides that each director of a condominium owes the unit owners a fiduciary duty in the performance of the director's responsibilities (see, Haw Rev Stat § 514A-82.4; see also, Ill Compiled Stat Annot, ch 765, § 605/18.4; Me Rev Stat Annot, tit 33, § 1603-103; Mo Stat Annot § 448.3-103; NM Stat Annot § 47-7C-3; 68 Pa Cons Stat Annot § 3303; RI Gen Laws § 34-36.1-3.03; W Va Stat Annot § 36B-3-103). In yet other States, courts have recognized that the members of an unincorporated condominium's managing board owe a fiduciary duty to the purchasers of their condominium units (e.g., *Cigal v Leader Dev. Corp.*, 408 Mass 212, 557 NE2d 1119; *Frances T. v Village Green Owners Assn.*, 42 Cal 3d 490, 723 P2d 573, 587).

We therefore conclude that a sponsor-appointed board of managers of a condominium owes a fiduciary duty to the unit purchasers, and that the court properly refused to dismiss the plaintiff's eighth cause of action because an issue of fact exists as to whether that duty was breached in the instant case. In so ruling, we recognize, in addition to the foregoing considerations, the practical concern that unit owners damaged by the bad-faith depredations of unscrupulous boards may find themselves without any realistic legal recourse in the event that the sponsor's assets become unavailable or dispersed due to voluntary corporate dissolution or involuntary liquidation by the Attorney-General pursuant to the Martin Act (see, General Business Law art 23-A).

We have considered the appellants' remaining contentions and find them to be without merit. We note that the plaintiffs' negligence claims are viable, as there was privity of contract

between the plaintiff and the appellants *(see, e.g., Ossining Union Free School Dist. v Anderson LaRocca Anderson,* 73 NY2d 417; *cf., Key Intl. Mfg. v Morse/Diesel, Inc.,* 142 AD2d 448).

THOMPSON, J. P., SULLIVAN and SANTUCCI, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.