OPINION OF THE COURT
Richard M. Klein, J.
Ordered that this motion by defendants, Paul Albora, Nancy *518 Albora and S. Randall Goat, for summary judgment dismissing the complaint is considered together with a cross motion by plaintiffs for summary judgment on the first and fourth causes of action. They are considered under CPLR 3212 and decided as follows:
The parties are for the most part the owners of units in a commercial condominium complex. In late 1994, defendants, Paul R. Slayton and the Slayton Group, sought to purchase an uncompleted portion of the condominium premises known as “Cluster C” to develop in conjunction with adjoining property which he owned. In order to accomplish this, Mr. Slayton needed the consent of each unit owner. He contacted each unit owner by letter, offering compensation between $10,000 and $12,000 for the transfer of their common interest. The moving defendants refused the initial offer and negotiated their own compensation. Paul Albora received an additional $52,500, and Mr. Goat received an additional $50,000. At the time of the negotiations, Nancy Albora and S. Randall Goat were members of the condominium’s board of managers.
In 1997, plaintiffs commenced this action against Nancy Albora and S. Randall Goat for an accounting because of a breach of their fiduciary duty by negotiating to receive the additional payments (the first cause of action) and for an accounting because of their status as agents of the unit owners (the second cause of action); against Nancy Albora, S. Randall Goat, Paul Slayton and the Slayton Group, Ltd. for fraud in misrepresenting their negotiations to the other unit owners (the third cause of action); and against Paul and Nancy Albora, S. Randall Goat and Richard Ruffner for an accounting because of their status as unit owners (the fourth cause of action).
Movants argue that the cause of action for breach of a fiduciary duty must fail because neither Nancy Albora nor S. Randall Goat were acting as members of the board of managers during the negotiations and therefore did not have any such duty; that their position on the board does not automatically make them agents of the other unit owners; that the deposition testimony does not support a finding that they misrepresented to the unit owners that they intended only to negotiate collectively with Mr. Slayton or that they induced the unit owners not to negotiate individually with Mr. Slayton; and finally, that co-owners of units do not legally owe each other a duty to account.
Plaintiffs do not object to the dismissal of the second cause of action for an accounting due to agency status. Accordingly, the *519 second cause of action is dismissed. They counter that members of the board breached their fiduciary duty when they engaged in self-dealing and financial self-aggrandizement. The letter agreements with Mr. Slayton concerning the additional payments signed by Nancy Albora and S. Randall Goat are offered as evidence of such conduct.
Regarding the fraud cause of action, plaintiffs argue that there is testimony to support a finding that at the board meeting there was an agreement that the unit owners would negotiate in concert with Mr. Slayton through Steve Fuchs. The fact that the agreements made by the movants with Mr. Slayton were to be kept confidential supports a finding of an intention to mislead and detrimental reliance by the others on the agreement to bargain collectively.
Clearly the law provides that members of the board of managers of a condominium owe a fiduciary duty to the owners of the units when engaged in the business of management (Board of Mgrs. of Fairways at N. Hills Condominium v Fairway at N. Hills, 193 AD2d 322 [1993]). Since the members of the board are either sponsor owners or unit owners, their personal interest may conflict with that of the common interest. Under such circumstances, any board member must be especially careful not to gear his or her conduct to benefit his or her own self-interest or that of the sponsor (Board of Mgrs. of Fairways at N. Hills Condominium v Fairway at N. Hills, supra). The bylaws are the vehicle by which unit owners forego certain individual property rights and delegate them to a board of managers. They spell out the limits of the board’s authority to act. One area in which the board of managers is given broad authority to act is in the area of maintenance and repair of the common elements of the condominium. While there are no provisions in either the condominium bylaws or the real property law concerning the sale of the common interest, several provisions relate to the change in the ownership of the common interest. These include:
(1) The condominium bylaws article XII which provides:
“In the event all or part of the common elements are taken in condemnation or eminent domain proceedings, the award from such proceedings shall be paid to the Insurance Trustee if the award is more than $50,000 and to the Board of Managers if the award is $50,000 or less, to be distributed in accordance with Section 3 of Article VII as follows: So much of the award as is applicable to common *520 elements, to the Unit Owners pro rata according to the respective percentages of common interests appurtenant to the Units owned by such Unit Owners.”
(2) Real Property Law § 339-i (2) which states:
“The common interest appurtenant to each unit as expressed in the declaration shall have a permanent character and shall not be altered without the consent of all unit owners affected, expressed in an amended declaration. However the declaration may contain provisions relating to the appropriation, taking or condemnation by eminent domain by a federal, state or local government, or instrumentality thereof, including, but not limited to, reapportionment or other change of the common interest appurtenant to each unit, or portion thereof, remaining after a partial appropriation, taking or condemnation.”
(3) Real Property Law § 339-t which states:
“If withdrawal of the property from this article is authorized by at least eighty per cent in number and in common interest of the units, or by at least such larger percentage either in number or in common interest, or in both number and common interest, as may be specified in the by-laws, then the property shall be subject to an action for partition by any unit owner or lienor as if owned in common, in which event the net proceeds of sale shall be divided among all the unit owners in proportion to their respective common interests * *
Accordingly, the intent of the condominium bylaws and statute are that upon the loss of the common interest appurtenant to their unit, unit owners should be compensated in proportion to the pro rata value of their unit (see also, Real Property Law § 339-i [1]).
The deposition testimony and affidavits presented suggest that there were discussions and a vote at a unit members general meeting that Steve Fuchs would represent the unit owners as opposed to the sponsors in negotiating a deal with Slay-ton and report back to the board and the unit members (Firestone at 9-24; Paul Albora at 9-10). Such testimony is contradicted by Mr. Fuchs’ affidavit submitted herein. The deposition testimony further establishes the fact that the receipt of the additional funds by the Alboras and Mr. Goat was to be *521 concealed from the other unit owners. It is also clear from the testimony that the meetings of the unit members and the board were informal at best and that they may have been held simultaneously.
The crux of the movants’ argument is that because there was no resolution, contract or writing concerning the above oral agreement, the members of the board have not in fact acted. However, the bylaws state (art II, § 5 [c] [8] [d]) that:
“At all meetings of the Board, a majority of the Managers shall be necessary and sufficient to constitute a quorum for the transaction of business, and an act of the majority of the Managers present at any meeting at which there is a quorum shall be the act of the Board of Managers * *
Article II, § 5, cited by the movants, requires a resolution of the board for the creation of a committee to exercise the power of the board. It is not applicable here. Contrary to movants’ argument, it is clear that the board may act without a resolution.
Thus, the court finds that Nancy Albora and S. Randall Goat had a fiduciary duty to act in a manner which would benefit the unit owners as a group with regard to the sale of their common interest to Mr. Slayton. Whether or not each of them acted or failed to act in a manner which breached that duty remains a question of fact. Further, the court finds there are issues of facts concerning the elements constituting a cause of action for fraud, including a material misrepresentation made with intent to deceive and detrimental reliance. However, the fourth cause of action is dismissed, as there is no legal or fiduciary duty that one unit owner account to another unit owner.
Accordingly, judgment is granted only to the extent that the second and fourth causes of action are dismissed.