## Wong v Board of Mgrs. of One Sunset Park Condominium

2024 NY Slip Op 33308(U)

September 20, 2024

Supreme Court, Kings County

Docket Number: Index No. 516926/20

Judge: Kerry J. Ward

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 9 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at Civic Center, Brooklyn, New York, on the 20th day of September, 2024.

P R E S E N T :

HON. KERRY J. WARD,

Justice.

-------------------------------------------X

WILSON WONG, JOSHUA LEE, DOROTHEA LEE, JIN XIA HUANG, JIE SHAN LI, MEI-CHAU KWOK, BILLY HUM, LARRY ROTHCHILD, JIAYUAN PENG, JIAN LIN LI, XI-PING CHEN, PETER GIBSON, LORRY WALL GIBSON, MINNEA LIN, JONATHAN RINEHART, JOHN BENSON, MAX PLYSHEVSKY, SUI TING CAO, HONGPEI CAO, PEIZHU LUO, PATRICK COLMAN, XUEFANG NI, MUXIAN WANG, GERALD MEYER, DAVID AKEY, CHELSEA SMITH, DORIS RENATE KIMBROUGH, JANET MATTHEWS – DERRICO, ELEANOR WHITNEY, ROBERT GERTLER, VIVIAN PERRILLA, ANNA ZHENG, MENG LI WANG, KE YONG WANG, BIN BIN CHENG, JODIE CHENG, HIU MENG CHENG, HE ZHU CHEN, SHUYU ZHENG,

Plaintiffs,

- against -

BOARD OF MANAGERS OF ONE SUNSET PARK CONDOMINIUM,

Defendant.

-------------------------------------------X

Index No. 516926/20

The following e-filed papers read herein:          NYSCEF Doc Nos.

Notice of Motion/Order to Show Cause/
Petition/Cross Motion and
Affidavits (Affirmations)_____          114-131      135-136, 138-157, 159-177

Opposing Affidavits (Affirmations)_____          135-136, 138-154, 156-157, 159-177

[* 1]

Upon the foregoing papers, defendant Board of Managers of One Sunset Park Condominium (Condominium Board) moves (in motion sequence [mot. seq.] two) for an order, pursuant to CPLR 3212, granting it summary judgment dismissing the complaint (NYSCEF Doc No. 114).

Plaintiffs Wilson Wong, Joshua Lee, Dorothea Lee, Jin Xia Huang, Jie Shan Li, Mei-Chau Kwok, Billy Hum, Larry Rothchild, Jiayuan Peng, Jian Lin Li, Xi Ping Chen, Peter Gibson, Lorry Wall Gibson, Minnea Lin, Jonathan Rinehart, John Benson, Max Plyshevsky, Sui Ting Cao, Hongpei Cao, Peizhu Luo, Patrick Colman, Xuefang Ni, Muxian Wang, Gerald Meyer, David Akey, Chelsea Smith, Doris Renate Kimbrough, Janet Matthews-Derrico, Elenor Whitney, Robert Gertler, Vivian Perrilla, Anna Zheng, Meng Li Wang, Ke Yong Wang, Bin Bin Cheng, Jodie Cheng, Hiu Ming Cheng, He Zhu Chen and Shuyu Zheng (collectively, Plaintiffs or Unit Owners) cross-move (in mot. seq. three) for an order: (1) granting them leave to amend the complaint, pursuant to CPLR 3025 (b); (2) adding Paul Klausner, Leroy Shepherd, Aaron Meshon, Zhen Liang Li, and Mark N. Fessel as party defendants, pursuant to CPLR 1003; and (3) granting Plaintiffs leave to serve the summons and the amended complaint upon the new defendants, pursuant to CPLR 1003 (NYSCEF Doc No. 155).

## Background

Plaintiffs are unit owners of the condominium building located at 702 44th Street in Brooklyn (Building). On April 3, 2019, there was a substantial fire in the Building which required removal of all occupants from their apartments. There were fifty-four (54)

2

[* 2]

apartments in the Building and the structure was declared unsafe for habitation by the City of New York.

On September 10, 2020, several of the Unit Owners commenced this action against the Condominium Board by filing a summons and a complaint seeking "to recover damages resulting from [the] Board's failure to procure the proper amount of fire insurance for the Condominium" (NYSCEF Doc No. 1 at ¶ 1). The complaint alleges that "[t]he Board was required to comply with the By-Laws and, accordingly, pursuant to Section 5.4 (C) of the By-Laws, the Board was required to maintain fire insurance equal to 'not less than' 80% of the full replacement cost of the building" (id. at ¶ 2). Allegedly, "[t]he Board failed to comply with these obligations . . ." and "upon information and belief, obtained insurance coverage of $13.7 million" although "the replacement value of the building is $25,200,000.00 to $26,880,000.00" (id. at ¶¶ 3-4). The complaint alleges that "the Condominium should have had fire insurance equal to at least $20,160,000.00, representing 80% of the replacement value of the building (80% of $25,200,000.00)" (id. at ¶ 4). The Unit Owners seek damages "equal to the insurance shortfall of at least $6,460,000.00 ($20,160,000-$13,700,000) . . ." (id. at ¶ 5).

In support of the alleged replacement value of the Building, the complaint annexes, as Exhibit A, the September 19, 2019 report issued by the Condominium Board's architect, Howard L. Zimmerman Architects, P.C. (Zimmerman Report) (NYSCEF Doc No. 2). The complaint references the Zimmerman Report and alleges that:

> "[t]he Zimmerman Report concluded that restoration and
> replacement of architectural elements is required in all

[* 3]

residential units and in all common space throughout the building.

"The Zimmerman Report calculated that average new construction costs in the Greater New York City area in the past year for a new 51,300 square foot plus finished cellar building of similar construction quality and configuration is expected to be $25,200,000.00 to $26,880,000.00" (NYSCEF Doc No. 1 at ¶¶ 48-49).

The complaint asserts a single cause of action against the Condominium Board for breach of the Condominium's by-laws by failing to obtain sufficient fire insurance coverage in 2018 to replace the entire Building based on the restoration costs in the Zimmerman Report (*id.* at ¶¶ 54-58).

On November 12, 2020, the Condominium Board answered the complaint, denied the material allegations therein and asserted that "the Condominium carried sufficient insurance as required by the Condominium Act and the Condominium By Laws" (NYSCEF Doc No. 5 at ¶ 51). The Condominium Board also asserted affirmative defenses, including (1) Plaintiffs lack standing to maintain this action in their individual capacities, and (2) "defendant acted in good faith, in compliance with the Condominium Act, the Condominium By Laws and in reliance upon its professionals in obtaining the requisite fire insurance coverage for the Building" and thus "[t]he complaint is barred by the Business Judgment Rule" (*id.* at ¶¶ 60, 64-66).

After issue was joined, discovery ensued.

4

[* 4]

### *The Condominium Board's Summary Judgment Motion*

On April 4, 2023, prior to the completion of discovery and before the taking of any party depositions, the Condominium Board moved for summary judgment dismissing the complaint (NYSCEF Doc No. 114). The Condominium Board submits an affidavit from Leroy Shepherd (Shepherd), the current president of the Condominium's board and the Condominium's custodian of records, who attests that the Building was converted to condominium ownership pursuant to an April 6, 2009 Declaration and annexes a copy of the Condominium's by-laws (NYSCEF Doc No. 117 at ¶ 4).

Shepherd asserts that the Condominium's summary judgment motion is based on "documents that establish that the Board, together with its insurance broker and an attorney . . . conducted due diligence [in 2013] prior to obtaining insurance coverage for fire and casualty loss" (*id.* at ¶¶ 6-11). Shepherd submits a December 2013 "email chain that establishes that Klausner [the former president of the Board] sought guidance in determining the amount of Property Insurance coverage necessary to insure the Building and whether and to what extent [the Condominium] was required to provide coverage for the individual units" (*id.* at ¶ 7). The December 2013 email chain reflects that the Condominium's insurance broker opined that "[t]he best answer to interior valuations can be ascertained in the condo documents and, generally speaking, condos have extremely limited restoration responsibilities within units" (NYSCEF Doc No. 128). The Condominium's attorney also advised that:

> "[a]ccording to Article 5.5 of the bylaws should there be a casualty the condo will rebuild the units and bathroom and

5

[* 5]

kitchen fixtures that are installed on the date the declaration was recorded [in April 2009]. Article 5.4 states what the condo's insurance covers. Nothing else is covered. I think you should provide your agent with a copy of the bylaws so he can review it himself" (*id.*).

Shepherd avers that, based on the due diligence conducted, "in 2013, [the Condominium] purchased Property Insurance for the Building in the amount of $8,200,000.00 and *periodically determined that the same amount was sufficient coverage through 2018*" (NYSCEF Doc No. 117 at ¶ 12 [emphasis added]). Notably, other than the December 2013 email chain, the Condominium Board fails to submit any other evidence demonstrating how the Condominium Board "periodically determined" that its insurance coverage was sufficient, *particularly in 2018, the policy period in effect at the time of the 2019 fire.*

The Condominium Board submits an affirmation from Theresa Racht (Racht), the Condominium's general counsel who was retained at the time of the fire and was "appointed inspector to conduct the vote of the unit owners on January 14, 2020, whether to restore the Building . . ."[1] (NYSCEF Doc No. 116 at ¶¶ 3 and 4). Racht affirms that "[t]he vote was conducted as a result of the Board's determination that more than 75% of the Building was destroyed or materially damaged" based on the Zimmerman Report (*id.* at ¶¶ 5-6). Racht affirms that "the vote to restore [the Building] was defeated since only

---

[1] Section 5.5 (D) of the Condominium's by-laws provides, in relevant part:

> "[i]f either 75% or more of the Building is destroyed or substantially damaged by fire or other casualty . . . the [restoration] Work shall not be performed unless Unit Owners owning 75% in common interest of the Units shall pass a resolution to proceed with the same. . . ." (NYSCEF Doc No. 122 at § 5.5 [D]).

6

[* 6]

27.55% of the unit owners, voting the percentage of their common interests, voted to restore the Building when a vote of more than 75% of the percentage of common interests was needed to restore, based on the voting results duly recorded by me as inspector of election . . ." (*id.* at ¶ 7). When Racht received inquiries from unit owners about the cost of restoration, she sent out a letter to all unit owners explaining that:

> "[w]hile the Condominium has broad authority under Article 5 of the By-Laws to oversee any restoration work required after a casualty loss, *the language does not shift the financial obligation for the interior of the unit from the unit owner to the Condominium*, and in fact, the special assessment provisions relating to casualty loss reaffirms the obligations of the unit owners to pay for the work" (*id.* at ¶ 8 [emphasis added]; *see also* NYSCEF Doc No. 130 [letter to unit owners]).

The Condominium Board also submits an expert affidavit from Matthew J. Guzowski (Guzowski), a real estate appraiser, who opines that the replacement value of the Building, exclusive of the residential units, the foundation and the land, was $7.5 million as of the date of the April 2019 fire, and is currently $10 million (NYSCEF Doc No. 118 at ¶ 11). Notably, Guzowski's affidavit does not mention or even address the Zimmerman Report, which the Condominium Board allegedly provided to Unit Owners regarding the replacement cost of the Building.

The Condominium Board submits a memorandum of law arguing, as a threshold issue, that "plaintiffs lack standing to assert the claims contained in their complaint, since the allegations primarily address an injury to the common area and elements" (NYSCEF Doc No. 132 at 8). The Condominium Board further argues that summary judgment is warranted because "plaintiffs cannot demonstrate that the amount of Property Insurance

7

[* 7]

coverage for the Building was inadequate, even assuming the complaint's sufficiency, simply because the plaintiffs do not allege that [the Condominium Board] acted in bad faith in purchasing Property Insurance *in 2013 and when it renewed the same policy that was in place at the time of the fire*" (*id.* at 9 [emphasis added]).

The Condominium Board asserts that "[i]n any event, the documentary evidence demonstrates [that the Condominium Board] acted in good faith in carrying out its contractual obligations to the unit owners when it purchased Property Insurance *in 2013 and annually thereafter*" (*id.* at 11 [emphasis added]). The Condominium Board notes that Section 5.5 (C) of the Condominium's by-laws "provide that the Building must be insured in an amount of not less than 80% of its replacement cost . . ." (*id.* at 13).

The Condominium Board argues that the evidence (i.e., Guzowski's expert appraisal of the Building), proves that "the value of the Building prior to the fire on April 3, 2019, which included the Building structure, common areas and elements, but not the foundation and land, the individual units or depreciation[,] was $7,500,000.00, less than the coverage amount of $8,200,000.00 in 2019 and more than 80% of the current value for the Building, which, according to the appraisal is, $10,000,000.00" (*id.* at 13-14). The Condominium Board asserts that it owed no duty to Plaintiffs to purchase property insurance for their benefit, since the By-Laws provide that unit owners shall carry their own insurance (*id.* at 14-15).

Finally, the Condominium Board asserts that:

"[w]hile we maintain that resolution of this summary judgment motion is essentially one of contract interpretation, the

8

'business judgment rule' also precludes this court from looking behind [the Condominium Board's] decision in purchasing and renewing Property Insurance for the Building, unless the plaintiffs can demonstrate that the Board acted in bad faith, engaged in self-dealing or other misconduct at the time" (*id.* at 16).

The Condominium Board argues that the record establishes a rational basis for the Condominium Board's purchase of insurance coverage of $8.2 million after consultation with its attorney and insurance broker in December 2013 (*id.* at 18-20).

### *Plaintiffs' Opposition and Cross-Motion to Amend the Complaint*

Plaintiffs, in opposition, assert that:

> "the Board's motion should be denied because: (i) it is premature since the parties are in the preliminary stages of discovery and have not conducted party depositions, (ii) the Board fails to establish *prima facie* its defenses, (iii) competing expert reports and appraisals in the record concerning the Condominium Building's 'replacement cost' raise issues of material fact warranting a trial, and (iv) facts necessary to oppose the motion lie exclusively in the Board's possession and in the possession of nonparties under the Board's control" (NYSCEF Doc No. 136 at ¶ 3).

Specifically, Plaintiffs' counsel asserts that the Condominium Board is not entitled to summary judgment because the Condominium Board's responses to Plaintiffs' disclosure failed to identify Guzowski as an expert, relied exclusively on the Zimmerman Report and failed to produce any documentation regarding the Condominium Board's determination to renew the insurance policy subsequent to 2013 (*id.* at ¶¶ 15-17). Counsel affirms that no disclosure took place from October 7, 2021 through the date of the Condominium Board's summary judgment motion on April 4, 2023, because the parties

9

stipulated to stay discovery until the related partition action (*Shepherd v Wong et al.*, Kings County index No. 508641/20) was fully resolved (*id.* at ¶¶ 19-22). Plaintiffs' counsel explains that, rather than await a determination in the partition action, as the parties contemplated in their stipulation, the Condominium Board precipitously moved for summary judgment when limited discovery has been exchanged and no depositions had been taken.

For these reasons, counsel asserts that the Condominium Board's premature summary judgment motion should be denied, pursuant to CPLR 3212 (f), so that Plaintiffs can obtain essential document discovery and depositions from the current and former presidents of the Condominium's Board, Shepherd and Klausner, the Condominium Board's previously undisclosed expert appraiser, Guzowski, and others "involved in the applications, underwriting, placement, and *renewal of Defendant's fire insurance policy [in 2018]* and the investigation, processing, valuation and coverage determinations . . ." (*id.* at ¶ 37 [emphasis added]). Counsel asserts that such discovery is essential to opposing the Condominium Board's summary judgment motion, including Shepherd's unsubstantiated affidavit testimony that "the Board 'periodically determined' $8,200,000 would be sufficient coverage for the Building when it renewed the policy for 2019" (*id.* at ¶¶ 24-25). Plaintiffs note that the Condominium Board "did not produce any Board meeting minutes, insurance application materials, or pertinent correspondence relating to the initial procurement or any renewal of the deficient $8,200,000 policy" in response to Plaintiffs' outstanding discovery requests (NYSCEF Doc No. 158 at 2).

10

[* 10]

Plaintiffs submit an affidavit from Peter Gibson (Gibson), one of the Plaintiff Unit Owners, who attests that he received the Zimmerman Report from the Condominium Board as part of the September 24, 2019 meeting materials sent to all Unit Owners with a notice advising that:

> "[t]he primary purpose of this meeting is to review the Building Assessment Report prepared by Howard Zimmerman Architects. Please review the report which is included in this email. Zimmerman was hired by the Board to generate a detailed report *as to the damage and current condition of the building, as well as the estimated costs to restore the building to its pre-fire condition,* to assist all of us in important upcoming decisions" (NYSCEF Doc No. 135 at ¶¶ 9-10 [emphasis added]).

Gibson recounts that Unit Owners were thereafter provided with a worksheet to calculate the economic option of restoration and were advised by the Condominium Board that the Zimmerman Report should be used as an estimate of the restoration cost (*id.* at ¶¶ 14-16). Gibson asserts that:

> "[d]espite the Unit Owners' past reliance on [the Zimmerman Report], the Board now claims, using a new 'expert', that the replacement cost of the Building was somehow only $7,500,000 when the fire occurred, which is more than $16,000,000 less than the $24,782,866 figure we relied on when we decided whether to vote to restore the Building" (*id.* at ¶ 24).

Gibson asserts that the Condominium Board's summary judgment motion should be denied because "[a] hearing is needed to resolve the discrepancies between the expert reports" regarding the restoration cost of the Building (*id.* at ¶ 25).

11

[* 11]

Plaintiffs also cross-move for leave to amend the complaint to: (1) assert the first cause of action for breach of contract as a derivative claim on behalf of all Unit Owners regarding the Condominium Board's breach of its insurance obligations under the By-Laws for restoration of the common elements of the Building; (2) add a second cause of action for breach of fiduciary duty against Klausner, Shepherd, Aaron Meshon (Meshon), Zhen Liang Li (Zhen) and Mark N. Fessel (Fessel), the Board members who obtained the allegedly deficient insurance coverage, derivatively on behalf of all Unit Owners; and (3) add a third cause of action for breach of contract directly against the board members who obtained the allegedly deficient insurance coverage (NYSCEF Doc No. 153 [redlined proposed amended complaint]).

Regarding the proffered breach of fiduciary duty claim, the proposed amended complaint alleges that the Condominium Board's 2018 decision to renew the Building's insurance was tainted by the economic self-interest of board members Klausner and Fessel, who were alleged principals and/or affiliates of the Condominium's sponsor, 4401 Sunset Holdings, which then owned 18 unsold units at the Building and was responsible for approximately 33.33% of the common expenses (NYSCEF Doc No. 153 at ¶¶ 73-77). The proposed amended complaint alleges that the Condominium Board, under Klausner's control, obtained insufficient insurance coverage in order to minimize the sponsor's corresponding common charge obligation, and thereby prioritized the sponsor's economic interest over the Condominium's insurance coverage needs (id. at ¶¶ 74-80).

12

[* 12]

The proposed amended complaint also asserts a breach of fiduciary claim against the other members of the Condominium's board (Shepherd, Meshon, Fessel, and Zhen) based on their alleged failure to both inform themselves of the Building's insurance coverage needs and to provide Unit Owners with information about the Condominium's insurance coverage (*id.* at ¶¶ 83-84).

In support of Plaintiffs' cross-motion to amend, Plaintiffs' counsel asserts that:

> "(i) leave to amend is freely granted, particularly when [] it is sought in the early stages of discovery and before depositions have been conducted; (ii) the proposed amended complaint asserts meritorious causes of action and cures the any alleged standing defect in the Original Complaint; and (iii) in the interests of justice, Plaintiffs' claims should be resolved on their merits" (NYSCEF Doc No. 136 at ¶ 4).

### The Condominium Board's Reply and Opposition to Plaintiffs' Cross-Motion

The Condominium Board, in reply, submits a memorandum of law arguing that the documentary evidence "establishes that [it] consulted with its professionals when it purchased the property insurance *in 2013 and acted in good faith when it renewed the policy in 2018*" (NYSCEF Doc No. 189 at 1 [emphasis added]). The Condominium Board "reiterates" that "even if the Board initially purchased insurance that was inadequate for the purposes intended *in 2013*, that decision was made in good faith and in consultation with its professionals" (*id.* at 11 [emphasis added]).

Regarding Plaintiffs' opposition based on their need for outstanding discovery, pursuant to CPLR 3212 (f), the Condominium Board asserts that:

13

[* 13]

> "[t]here is . . . no claim in the Gibson affidavit that the Board and/or its members acted in bad faith or engaged in self-dealing in violation of the By-Laws, *or that further discovery will uncover any such evidence* in the face of the clear and unequivocal documentation that Klausner communicated with the Board's professionals [in 2013] before purchasing insurance for the Condominium" (*id.* at 15 [emphasis added]).

The Condominium Board further asserts that the Gibson affidavit fails to explain how additional discovery might reveal facts within the Board's exclusive knowledge and control regarding "the Board members' state of mind when they renewed the 2018 property insurance policy" (*id.*). Notably, the Condominium Board does not mention, or even address, the conflicting expert opinions it obtained regarding the cost to restore the Building in the Zimmerman Report and Guzowski's expert affidavit.

The Condominium Board opposes Plaintiffs' cross-motion for leave to amend the complaint by generally arguing that the proposed amended complaint is "palpably insufficient" and "devoid of merit" (*id.* at 2). The Condominium Board argues that Plaintiffs' new claim against the individual Board members seeking monetary damages for breach of their fiduciary duties owed to the Unit Owners is barred by the three-year statute of limitations (*id.* at 3). The Condominium Board asserts that "[t]he statute of limitations in this action accrued in 2013 when the Board originally purchased the property insurance for coverage in the amount of $8,200,000.00" (*id.* at 4). Alternatively, the Condominium Board argues that "[e]ven assuming the accrual date was June 2, 2018, the effective date of the renewal policy that was in place on April 3, 2019, the date of the fire . . . the cross-motion was filed on July 19, 2023, more than four years thereafter . . ." (*id.*).

14

The Condominium Board further argues that the Unit Owners' proposed claim for breach of fiduciary duty should be rejected because it is "duplicative" of the Unit Owners' claim for breach of the Condominium's by-laws (*id.* at 5). The Condominium Board also argues that "[s]ince the original complaint, which sounded in contract, did not give notice of the transactions to be proved for breach of fiduciary duty, a tort, the court must deny permission to amend the complaint[,]" pursuant to CPLR 203 (f) (*id.* at 6). Finally, the Condominium Board asserts that the second cause of action in the proposed amended complaint for breach of fiduciary duty should be rejected because it "lacks particularity" and the supporting allegations were made "upon information and belief" (*id.* at 8-9).

### Plaintiffs' Reply

Plaintiffs, in reply and in further support of their cross-motion, argue that the Condominium Board's opposition "does not contend the timing of Plaintiffs' motion would cause prejudice or surprise to any Defendant named [there]in . . . or that granting Plaintiffs' motion would unduly delay this proceeding, still in the early stages of discovery" (NYSCEF Doc No. 191 at 2). Plaintiffs argue that "[t]he proposed amendment [adding a derivative claim] cures any alleged standing defect as to Plaintiffs' breach of contract claim in the Original Complaint" (*id.*).

Regarding Plaintiffs' proposed breach of fiduciary duty claim, Plaintiffs assert that it is not duplicative of their claims for breach of the Condominium's by-laws because "[e]ven if a cause of action concerns some of the same underlying conduct as the breach of contract cause of action, if the allegations concern a breach of a duty that is independent of

15

[* 15]

the contract, they are not subject to dismissal as duplicative" (*id.* at 3). Plaintiffs also dispute that a breach of fiduciary duty claim is time-barred because:

> "Defendant fails to establish when Plaintiffs' claims accrued, applies the wrong statute of limitations to Plaintiffs' derivative claim, and there remains an open question of fact as to whether Plaintiffs' claim against each Defendant have been tolled under the fiduciary tolling doctrine" (*id.* at 4).

Plaintiffs argue that their proposed breach of fiduciary duty claim did not accrue for statute of limitations purposes until damages were sustained at the time of the fire in April 2019 (*id.* at 5). Plaintiffs further contend that the by-laws "imposed an ongoing requirement that the Board annually obtain adequate insurance for the Condominium" and thus, "[e]ach renewal of the 2013 policy, and each Defendant's breach with respect to the 2018 renewal, is a new, overt act that is independently actionable . . .." (*id.*). Plaintiffs assert that the Condominium's reliance on the three-year statute of limitations "ignores Court of Appeals precedent that a six[-]year statute of limitations applies to all derivative claims[,]" pursuant to CPLR 213 (7), regardless of whether money damages are sought (*id.* at 6).

## Discussion

### (I)

### *Plaintiffs' Cross-Motion to Amend*

CPLR 3025 (b) provides that leave to amend a pleading "shall be freely given" and the determination regarding the amendment of a pleading is committed to the court's sound discretion (*Edenwald Contr. Co., Inc. v City of New York*, 60 NY2d 957 [1983]). Generally, "leave should be given where the amendment is neither palpably insufficient nor patently

16

devoid of merit, and the delay in seeking amendment does not prejudice or surprise the opposing party" (*US Bank, N.A. v Primiano*, 140 AD3d 857 [2d Dept. 2016]).

Here, delay is not an issue, since this case is in its early stages of discovery and there is no apparent prejudice from amendments at this juncture which, based on the same facts, seek to correct a purported standing issue raised by the Condominium Board by adding a derivative claim, adding a timely[2] breach of fiduciary duty claim against Klausner and Fessel along with the addition of Shepherd as a necessary party, as he is the current president of the Condominium's board.

The Second Department has held that "[a]n unincorporated association such as the Condominium has 'no legal existence separate and apart from its individual members'" and therefore, by commencing an action against the president of the Board of the Condominium, the plaintiff has joined the entire Condominium Board as a defendant (*Pasqual v Rustic Woods Homeowners Ass'n, Inc.*, 134 AD3d 1006, 1006-1007 [2015] [citations omitted]). In so holding, the Second Department relied on General Associations Law § 13, which provides that:

> "[a]n action or special proceeding may be maintained, *against the president or treasurer* of such an association, to recover any property, or upon any cause of action, for or upon which the plaintiff may maintain such an action or special proceeding, against all the associates, by reason of their interest or ownership, or claim of ownership therein, either jointly or in common, or their liability therefor, either jointly or severally" (emphasis added).

---

[2] CPLR 213 (7) sets forth a six-year statute of limitations for derivative claims, such as the breach of fiduciary duty claim asserted here. In any event, defense counsel conceded during oral argument that the proposed claim is not time-barred.

17

Thus, Shepherd, the current president of the Condominium Board, is not only a proper party, but he is a necessary party to this action against defendant.

To state a claim for breach of fiduciary duty a complaint must allege: (1) the existence of a fiduciary relationship, (2) misconduct by the defendant(s), and (3) damages directly caused by defendants' misconduct (*Village of Kiryas Joel v County of* Orange, 144 AD3d 895, 898 [2d Dept 2016]). The Second Department has long held that a condominium board "is by definition in a fiduciary relationship with the unit owners" because:

> "a fiduciary is one who transacts business, or who handles money or property, which s not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part" (*Bd. Of Managers of Fairways at N. Hills Condominium v Fairway at N. Hills*, 193 AD2d 322, 325 [2d Dept 1993] [internal quotation marks and citations omitted]).

A condominium board may rebut allegations that it breached its fiduciary duty and demonstrate its entitlement to dismissal of the cause of action by establishing that it acted in good faith, within its authority, and for the benefit of the condominium (*see Skouras v Victoria Hall Condominium*, 73 AD3d 902, 903 [2d Dept 2010] quoting *Schoninger v Yardarm Beach Homeowners' Assn.*, 134 AD2d 1, 10 [2d Dept 1987]; *Levine v Greene*, 57 AD3d 627, 628 [2d Dept 2008]).

"A violation of bylaws is akin to a breach of contract" (*Pasqual v Rustic Woods Homeowners Ass'n. Inc.*, 134 AD3d 1003, 1005 [2d Dept. 2015]). To state a claim for

18

[* 18]

breach of a condominium's by-laws, the pleading must allege: "(1) the existence of a contract, (2) the plaintiff's performance pursuant to the contract, (3) the defendant's breach of its contractual obligations, and (4) damages resulting from the breach" (*Kollatz v kOS Bldg. Group, LLC*, 188 AD3d 1175, 1177 [2d Dept 2020] [internal quotation marks and citations omitted]). "'[T]he same conduct which constitutes a breach of a contractual obligation may also constitute the breach of a duty arising out of the contract relationship which is independent of the contract itself'" (*Hamlet at Willow Cr. Dev. Co., LLC v Northeast Land Dev. Corp.*, 64 AD3d 85, 112-113 [2d Dept 2009], quoting *Dime Sav. Bank of New York FSB v Skrelja*, 227 AD2d 372, 3472 [2d Dept 1996]). "Where it does, a contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, the breach of contract" (*Hamlet at Willow Cr. Dev. Co., LLC*, 64 AD3d at 113 [internal quotation marks and citations omitted]).

Here, upon review of the proposed amended complaint adding derivative claims for breach of fiduciary duty and breach of the by-laws, leave to amend is granted to the extent that Klausner, the president of the Condominium Board in 2018 who made the determination to renew the same insurance coverage in place since 2013, may be added as a party defendant along with Fessel, both of whom were allegedly affiliated with the sponsor and allegedly compromised the Unit Owners' best interests in breach of their fiduciary duties. Plaintiffs, however, failed to demonstrate any basis to add the other Condominium Board members as party defendants. Indeed, Section 2.20 (A) of the

[* 19]

Condominium's by-laws, entitled "Liability of the Condominium Board," specifically provides, in relevant part, that:

> "[t]he members of the Condominium Board *shall have no liability to the Unit Owners for errors of judgment, negligence, or otherwise*, except that each member of the Condominium Board shall be liable thereto for his own bad faith or willful misconduct. . . ." (NYSCEF Doc No. 122 at § 2.20 [A] [emphasis added]).

Thus, there is no ground to add Meshon and Zhen as party defendants because there is no allegations that those particular board members acted in bad faith.

## (2)

### *The Condominium's Summary Judgment Motion*

Summary judgment is a drastic remedy that deprives a litigant of his or her day in court and should, thus, only be employed when there is no doubt as to the absence of triable issues of material fact (*Kolivas v Kirchoff*, 14 AD3d 493 [2d Dept. 2005]; *see also Andre v Pomeroy*, 35 NY2d 361, 364 [1974]). "The proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment, as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Manicone v City of New York*, 75 AD3d 535, 537 [2d Dept. 2010], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *see also Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). If it is determined that the movant has made a prima facie showing of entitlement to summary judgment, "the burden shifts to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require

20

a trial of the action" (*Garnham & Han Real Estate Brokers v Oppenheimer*, 148 AD2d 493 [2d Dept. 1989]).

Where, as here, owners of a condominium unit challenge an action by the condominium's board of directors, the court must apply the business judgment rule. The Second Department has held that "[t]he business judgment rule . . . prohibits judicial inquiry into the actions of the board as long as the board acts for the purpose of the condominium, within its authority and in good faith" (*Acevedo v Town 'N Country Condominium, Section I, Bd. of Mgrs.*, 51 AD3d 603, 603 [2d Dept. 2008] [holding that condominium board "met its prima facie burden by establishing that it acted in good faith, within its authority, and for the benefit of the condominium, when it retained an insurance broker to procure insurance sufficient to cover full replacement of the buildings . . ."]). The Second Department has further held that:

> "the court's inquiry is limited to whether the board acted within the scope of its authority under the bylaws (a necessary threshold inquiry) and whether the action was taken in good faith to further a legitimate interest of the condominium. Absent a showing of fraud, self-dealing or unconscionability, the court's inquiry is so limited and it will not inquire as to the wisdom or soundness of the business decision" (*1812 Quentin Road, LLC v 1812 Quentin Road Condominium Ltd.*, 94 AD3d 1070, 1072 [2012] [internal quotation marks omitted]).

Here, Section 5.4 (A) of the Condominium's by-laws entitled "Insurance" provides, in relevant part, that:

> "[t]he Condominium Board shall obtain, and shall maintain in full force and effect, fire insurance policies with all risk extended coverage . . . insuring the Building (*including all Units, bathroom and kitchen fixtures, but not including*

21

*appliances or any furniture, furnishings, decorations, belongings, or other personal property supplied or installed by Unit Owners or the tenants of Unit Owners)* and covering the interests of the Condominium, the Condominium Board, all of the Unit Owners and all Permitted Mortgagees, as their interests may appear. . . ." (NYSCEF Doc No. 198).

Section 5.4 (C) provides that "the coverage shall be in an amount equal to not less than eighty (80%) percent of the full replacement cost of the Building . . ." (*id.*). Section 5.4 (E) provides that "Unit Owners shall be required to carry liability insurance in such amounts as the Condominium Board shall reasonably require" and "may carry other insurance for their own benefit . . ." (*id.*). Section 5.5 (B) provides that in the event of a casualty the Condominium is only responsible to restore:

> "the portion(s) of the Building (*including all Units and the bathroom and kitchen fixtures installed therein on the date of recording the Declaration [in 2009]* and all service machinery contained therein, but not including appliances or any furniture, furnishings, decorations, belongings, or other personal property supplied or installed by either Unit Owners or the tenants of Unit Owners) affected by such Casualty Loss . . ." (*id.*] [emphasis added]).

Thus, according to the express terms of the Condominium's by-laws, in 2018, the Condominium's board was required to procure insurance coverage equal to 80% of the "full replacement cost of the Building" (*id.* at § 5.4 [C]).

While the Condominium demonstrated that Klausner, the Condominium Board's former president, initially obtained $8.2 million in fire insurance coverage for the Building after consulting with the Condominium's attorney and insurance broker *in December 2013*, there is no evidence in the record reflecting that the Condominium Board consulted with

22

anyone regarding the adequacy of such insurance coverage when Klausner subsequently renewed the same insurance policy annually. Indeed, other than the December 2013 email chain, the Condominium Board fails to submit any evidence demonstrating how its board "periodically determined" that the insurance coverage was sufficient, *especially in 2018*, the relevant policy period in effect at the time of the April 2019 fire. Thus, on this insufficient record, it is impossible to determine the threshold issue of whether the Condominium Board acted within the scope of its authority under the bylaws *in 2018*. Without any evidence of the Condominium Board's 2018 determination, there is no prima facie showing that the Condominium Board renewed its policy in 2018 in good faith and to further a legitimate interest of the Condominium. Consequently, there are issues of fact as to whether the Condominium Board's 2018 determination regarding the sufficiency of its fire insurance coverage is beyond judicial scrutiny under the business judgment rule. These factual issues preclude summary judgment regarding the claims set forth in the original and the proposed amended complaint.

Furthermore, the record contains conflicting conclusions by the Condominium Board's experts, Zimmerman (NYSCEF Doc No. 2) and Guzowski (NYSCEF Doc No. 118), regarding the replacement cost of the Building, both of which conflict with the Fire Damage Appraisal Report of Fire & Restoration LLC, which was obtained by the Condominium Board's public adjuster (NYSCEF Doc No. 163)[3], independently warranting denial of the Condominium's summary judgment motion. Indeed, Plaintiffs are

---

[3] The court notes that said appraisal indicated that the replacement costs of the Property was approximately $17,300,000.

23

[* 23]

entitled to discovery regarding these expert reports, and whether the board sought expert guidance in 2018 when renewing the same policy that had been in place for five years, since 2013. Accordingly, it is hereby

**ORDERED** that the Condominium Board's summary judgment motion (mot. seq. two) is denied without prejudice and with leave to renew after the conclusion of all discovery; and it is further

**ORDERED** that Plaintiffs' cross-motion for leave to amend the complaint (mot. seq. three) is only granted to the extent that leave to amend the complaint is granted and the proposed amended complaint (NYSCEF Doc No. 152) is deemed to be accepted with the exceptions of the following allegations regarding Aaron Meshon and Zhen Liang Li (*id.* at 1 and ¶¶ 7, 41, 82-85, 89 and 91); and it is further

**ORDERED** that the amended complaint (excluding all references to proposed individual defendants Meshon and Zhang) shall be served upon the new party defendants, Paul Klausner, Leroy Shepherd and Mark N. Fessel, and shall also be e-filed within 30 days of service of this decision and order with notice of entry thereof.

This constitutes the decision and order of the court.

E N T E R,

KW

_____
A. J. S. C.

24

[* 24]